# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

KELLY L. DEFFINGER,
  Plaintiff,

  vs.

COMMISSIONER OF
SOCIAL SECURITY,
  Defendant.

Case No. 1:18-cv-258

Barrett, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff Kelly L. Deffinger brings this action pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security

("Commissioner") denying her applications for disability insurance benefits ("DIB") and

supplemental security income ("SSI"). This matter is before the Court on plaintiff's statement of

errors (Doc. 6), the Commissioner's response in opposition (Doc. 12), and plaintiff's reply

memorandum (Doc. 13).

## I. Procedural Background

Plaintiff protectively filed her applications for DIB and SSI in October 2014, alleging

disability since June 22, 2013[1] due to an injury causing herniated discs in the neck and lower

back, bulging discs in the middle of her spine, depression, and anxiety. The applications were

denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted

a *de novo* hearing before administrative law judge ("ALJ") Peter J. Boylan. Plaintiff and a

vocational expert ("VE") appeared and testified at the ALJ hearing on February 24, 2017. On

April 12, 2017, the ALJ issued a decision denying plaintiff's DIB and SSI applications.

---

[1] Plaintiff previously filed for benefits in 2011, alleging a disability onset date of March 7, 2011. She subsequently
amended her alleged onset date to June 22, 2013, the day after the prior ALJ decision.

Plaintiff's request for review by the Appeals Council was denied, making the decision of ALJ Boylan the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four

steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

## B. The Administrative Law Judge's Findings

Plaintiff previously filed applications for DIB and SSI in April 2011, alleging disability since March 7, 2011. These applications were denied initially and upon reconsideration. After a hearing, ALJ Curt Marceille issued a decision on June 21, 2013 denying plaintiff's DIB and SSI applications. (Tr. 71-89). In rendering his decision on plaintiff's subsequent DIB and SSI applications, ALJ Boylan recognized that he was bound under principles of administrative res judicata by ALJ Marceille's prior findings as to plaintiff's residual functional capacity ("RFC") "unless there is new and material evidence or a showing of 'changed circumstances.'" (Tr. 10) (citing Acquiescence Ruling (AR) 98-4(6); *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997), *Dennard v. Sec'y of H.H.S.*, 907 F.2d 598 (6th Cir. 1990), AR 98-3(6)). ALJ Boylan determined that "the updated medical evidence demonstrates material changes that merit slight changes to the findings of fact identified in the prior decision." (*Id.*).

ALJ Boylan applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] meets the insured status requirements of the Social Security Act through September 30, 2016.

2. The [plaintiff] has not engaged in substantial gainful activity since June 22, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3

3. The [plaintiff] has the following severe impairments: degenerative disc disease of the spine status post two cervical discectomies and one lumbar laminectomy; depression; and borderline intellectual functioning (20 CFR 404.1520(c) and 416.920(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except for the following limitations. The [plaintiff] can climb ramps and stairs frequently, but never climb ladders, ropes, or scaffolds. The [plaintiff] is limited to occasional stooping, while she can never crouch or crawl. The [plaintiff] is limited to occasional overhead reaching with the bilateral upper extremities. The [plaintiff] must avoid all exposure to hazards such as dangerous machinery and unprotected heights. The [plaintiff] is limited to simple, routine tasks. The [plaintiff] is limited to simple, work-related decisions. The [plaintiff] is limited to frequent interaction with supervisors, occasional interaction with coworkers, and no interaction with the public as part of her job duties. The [plaintiff] is limited to tolerating occasional changes in a routine work setting.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[2]

7. The [plaintiff] was born [in] . . . 1967 and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and can communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled" whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404 Subpart P, Appendix 2).

---

[2] Plaintiff has past relevant work as a fire and water restorer, a heavy, skilled position; a food prep/dishwasher and housekeeper, both medium, unskilled positions; a warehouse worker, a medium, unskilled position, heavy as performed; and a school janitor, a medium, semi-skilled position. (Tr. 19, 61, 384).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[3]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from June 22, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 12-21).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

---

[3]The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light, unskilled occupations such as bus monitor (100 jobs in the local economy, 23,000 jobs in the national economy), protective clothing issuer (125 jobs in the local economy, 68,000 jobs in the national economy); and weights/measure checker clerk (450 jobs in the local economy, 45,000 jobs in the national economy). (Tr. 20, 62-64).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545–46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, plaintiff alleges that the ALJ: (1) erred in weighing the medical opinions of record, (2) erred in failing to evaluate all of the limitations resulting from her thoracic and lumbar spine impairments, and (3) erred in assessing her subjective complaints in accordance with Social Security Ruling 16-3p. (Docs. 6, 13).

**1. Whether the ALJ properly weighed the medical opinion evidence.**

Plaintiff argues that the ALJ erred in giving "some weight" to state agency reviewing psychologists Drs. Tangerman and Lai and by giving "little weight" to psychologist Dr. Murphy. (Doc. 6 at 4). Plaintiff argues that the state agency psychologists gave "great weight" to Dr. Murphy's opinion, so it was an error for the ALJ to discount his opinion. (*Id.*). Plaintiff argues that the ALJ erred in not including any of Dr. Murphy's findings in the RFC, including plaintiff's poor tolerance for stress and his report that plaintiff was more depressed and anxious as of

October 2014. (*Id.*). Plaintiff argues that the ALJ also erred in not accounting for all of the work-related limitations assessed by the state agency psychologists. (*Id.* at 5).[4]

In August 2011, plaintiff was referred by her attorney to psychologist Dr. Kevin Murphy, Ph.D., for an evaluation. (Tr. 442-44). During this evaluation, plaintiff complained of depression. She related that her former employer resented having to take her back at a light duty status and that her supervisors and coworkers harassed her. (Tr. 443). Dr. Murphy noted that plaintiff exhibited slowed speech at times due to depression. (*Id.*). Plaintiff admitted to being depressed and described herself as crying every other day, having low energy, poor sleep, variable appetite, reduced socialization, irritability, lack of enjoyment, and living in isolation. (*Id.*). Plaintiff also described significant anxiety, feeling nervous and tense most of the time, and having trouble concentrating and focusing. (Tr. 444). At the time, plaintiff did not take any antidepressant medication. (*Id.*). Plaintiff appeared depressed and became tearful when describing these changes in her mood and behavior, which occurred after a back injury she suffered in March 2010 while at work. (*Id.*). Dr. Murphy opined that plaintiff appeared to be of average to low average intelligence based on her use of vocabulary and sentence structure. (*Id.*). Dr. Murphy assessed plaintiff with depressive disorder as a direct result of her ongoing physical pain, physical limitations, and negative life changes following her industrial injury. (*Id.*). Dr. Murphy recommended ongoing psychotherapy and possible psychotropic medication. (*Id.*).

Plaintiff saw Dr. Murphy again in October 2014, who noted a long delay in plaintiff getting approved for worker's compensation for her depression resulting from the work injury.

---

[4] Plaintiff also argues that the ALJ erred in discounting her subjective complaints of pain when the state agency psychologists found her to be "fully credible." (Doc. 6 at 4). The Court will address this argument in conjunction with plaintiff's third assignment of error, which makes the same argument.

(Tr. 441). Dr. Murphy reported that plaintiff was "more depressed and anxious than she was in the evaluation." (*Id.*). Plaintiff described frequent crying spells, low energy, suicidal thoughts (no plan or intent), marked irritability, poor sleep, and no appetite. (*Id.*). Plaintiff tried taking Cymbalta for her depression, but it made her fatigued so she stopped taking it. (*Id.*). Dr. Murphy stated that "[w]e will be taking a straightforward cognitive behavioral approach to help with her depression and anxiety." (*Id.*). Dr. Murphy recommended at least six more months of psychotherapy every other week. (*Id.*).

Dr. Murphy completed interrogatories on behalf of the state agency in December 2014 and March 2015. (Tr. 390-92, 525-27). In the December 2014 interrogatories completed for initial consideration purposes, Dr. Murphy stated that he last saw plaintiff on December 29, 2014. (Tr. 390).[5] In the March 2015 interrogatories completed for reconsideration purposes, Dr. Murphy reported that he last saw plaintiff on January 29, 2015.[6] (Tr. 525). In both interrogatories, Dr. Murphy reported that plaintiff experiences poor concentration, low frustration tolerance, and a very poor tolerance for stress. (Tr. 391-92, 526-27). Dr. Murphy responded that plaintiff's symptoms have responded to treatment. (Tr. 527, 391). Dr. Murphy noted that plaintiff's symptoms have a minimal restriction on her daily activities, have a moderate effect on her self-care, and cause moderate problems with her social interactions, especially as it relates to the general public or coworkers/supervisors. (Tr. 391, 526).

In February 2015, state agency psychologist Paul Tangeman, Ph.D., reviewed the record on initial consideration. In May 2015, state agency psychologist Jaime Lai, Psy.D., reviewed the record for reconsideration purposes. Both Drs. Tangeman and Lai concluded that plaintiff is

---

[5] The certified administrative record does not contain Dr. Murphy's records from December 2014.
[6] The certified administrative record does not contain Dr. Murphy's records from January 2015.

limited to simple, routine, and repetitive tasks with no more than occasional (if any) decision making or workplace changes. Drs. Tangeman and Lai noted that they were adopting the RFC from the ALJ decision of June 21, 2013 under AR-98-4 (*Drummond* Ruling). (Tr. 107, 138). They found plaintiff "fully credible." (Tr. 108, 139). However, they also noted the almost three-year gap between plaintiff's 2011 initial psychological evaluation related to her work injury and the start of therapy in October 2014. (*Id.*). Dr. Tangeman assigned "other" weight to Dr. Murphy's December 2014 opinion. (Tr. 108). Dr. Tangeman noted that he assigned lesser weight to Dr. Murphy's opinion because he conducted an evaluation on plaintiff in 2011 but did not see her again until October 2014. (*Id.*). Dr. Tangeman noted that Dr. Murphy indicated plaintiff had poor frustration tolerance and concentration, but he also indicated that these symptoms had a minimal restriction on plaintiff's activities of daily living. (*Id.*). Dr. Lai assigned Dr. Murphy's October 2014 treatment summary "great" weight, noting that his "statements appear to support the worsening alleged by the claimant of her symptoms as he states more depressed, crying." (Tr. 139). Dr. Lai agreed with Dr. Tangeman's conclusion that Dr. Murphy's December 2014 opinion was entitled to "other weight" because of the gap in treatment between the initial evaluation in 2011 and the start of treatment in October 2014. (*Id.*). Dr. Lai also agreed that Dr. Murphy's December 2014 opinion was not entitled to full weight because he indicated that plaintiff's poor frustration tolerance and concentration only had a minimal restriction on plaintiff's activities of daily living. (*Id.*).

The ALJ afforded the opinions of state agency reviewing physicians Drs. Tangeman and Lai "some weight." (Tr. 19). The ALJ noted that their assessments contained a brief discussion of the mental health evidence and the identified limitations were largely consistent with the record at the hearing level. (*Id.*). Nevertheless, the ALJ declined to fully adopt their opinions

and added additional limitations on plaintiff's social functioning given the "worsening of her mental health impairments, as reported on the single occasion where she met with Dr. Murphy and in her statements in this case. . . ." (*Id.*). The ALJ gave "little weight" to Dr. Murphy's March 2015 opinion. (*Id.*). The ALJ rejected Dr. Murphy's opinion on the basis that he offered no supporting evidence for his claims and failed to elaborate on his briefly-worded, ambiguous responses. (*Id.*). The ALJ also noted that Dr. Murphy's opinion was inconsistent with the record and plaintiff's activities. (*Id.*).

The Court concludes that the ALJ properly weighed the medical source opinions in his RFC determination. First, plaintiff has not shown how the ALJ erred in affording "some weight" to Drs. Tangeman and Lai and "little weight" to Dr. Murphy. A review of the assessments of both Drs. Tangeman and Lai on initial consideration and reconsideration shows that these psychologists both questioned Dr. Murphy's December 2014 opinion. Both psychologists acknowledged that Dr. Murphy saw plaintiff for a work-related evaluation in 2011, but he did not begin seeing her for treatment until October 2014. (Tr. 108, 139). Both psychologists also acknowledged that while Dr. Murphy indicated that plaintiff had issues with frustration tolerance and concentration, he nevertheless opined that these issues had a minimal restriction on plaintiff's activities of daily living. (*Id.*). Both psychologists indicated that Dr. Murphy's opinion was "partially consistent" with plaintiff's allegations. (*Id.*). On reconsideration, plaintiff submitted Dr. Murphy's October 2014 "treatment summary" as evidence. Plaintiff is correct that Dr. Lai afforded this opinion "great weight" and recognized that this statement supported a worsening of plaintiff's condition. However, in weighing Dr. Tangeman and Dr. Lai's opinions, the ALJ likewise considered Dr. Murphy's October 2014 statement that plaintiff's condition had worsened. The ALJ accommodated this statement by adding greater limitations to the RFC

regarding plaintiff's social functioning than assessed by the state agency psychologists. (Tr. 19). Therefore, the ALJ ultimately accommodated the "worsening" in plaintiff's condition as reported by Dr. Murphy and that Dr. Lai found to be supported.

Second, contrary to plaintiff's assertion, the ALJ gave sufficient reasons for determining plaintiff's RFC as required by Social Security Ruling 96-8p. Social Security Ruling 96-8p provides that "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The Ruling also requires the ALJ to "assess [the claimant's] work-related abilities on a function-by-function basis." Id. at *1. However, the Ruling does not require ALJ's decision to include a function-by-function discussion of each work-related activity in the RFC. Delgado v. Comm'r of Soc. Sec., 30 F. App'x 542, 548 (6th Cir. 2002) ("[a]lthough a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing") (quoting Bencivengo v. Comm'r of Soc. Sec., No. 00-1995, 2000 WL 1929759 (3d Cir. Dec. 19, 2000)). The ALJ must only show "how the evidence supported the RFC determination, discuss the individual's ability to perform work-related activities, and explain the resolution of any inconsistencies in the record." Wolte-Rotondo v. Comm'r of Soc. Sec., No. 15-13093, 2016 WL 4087232, at *1 (E.D. Mich. August, 2, 2016) (citing Delgado, 30 F. App'x at 548).

Here, the ALJ thoroughly explained the mental health evidence in the record and how it does not support plaintiff's alleged inability to perform work-related activities. The ALJ first noted that there was a "general lack of mental health treatment since the prior decision." (Tr. 17). The ALJ explained that plaintiff was prescribed Cymbalta for depression by her primary care provider in January 2014 but provided no additional complaints of depression to this

provider. (*Id.*). On the contrary, plaintiff repeatedly denied any mental health problems in subsequent treatment records. (*Id.*) (citing Tr. 532-36, 589-92, 604-08). The ALJ also considered Dr. Murphy's August 2011 consultative examination and October 1, 2014 report, documenting that plaintiff complained of worsened depression and Dr. Murphy recommended ongoing psychotherapy. (Tr. 18) (citing Tr. 390-96). The ALJ stated that the record did not support plaintiff's testimony that she saw Dr. Murphy for counseling in 2013-2014, and there was no record of any additional follow-up with Dr. Murphy beyond his October 1, 2014 report. (*Id.*) (citing Tr. 441). Considering the above medical evidence, ALJ Boylan completed a detailed review to support his RFC determination.

Third, the ALJ was not required to adopt all of the limitations assessed by Drs. Tangeman and Lai. "Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015). In any event, the ALJ adopted the prior mental RFC, as recommended by the state agency psychologists (Tr. 110, 142), and found that new evidence of the worsening of plaintiff's mental health impairments, as reported by Dr. Murphy in October 2014, supported greater limitations on plaintiff's social functioning. (Tr. 19). Plaintiff argues that the ALJ did not account for Dr. Murphy's October 2014 report in the mental RFC. (Doc. 6 at 4). However, the ALJ's decision reflects otherwise. The ALJ explicitly noted that he gave plaintiff "the benefit of the doubt that she had some worsening of her mental health impairments, as reported on the single occasion where she met with Dr. Murphy. . . ." (Tr. 19). Accordingly, plaintiff's first assignment of error should be overruled.

**2. Whether the ALJ properly considered plaintiff's physical limitations in the RFC.**

Plaintiff argues as her second assignment of error that the ALJ failed to evaluate all of her limitations from her thoracic and lumbar spine impairments in crafting the RFC, including evidence of: (1) March 2014 problems with the left fingers (Tr. 454); (2) thoracic spine problems in October 2014 (Tr. 449); (3) thoracic spine problems and lumbar radiculopathy noted by Dr. Rojas in 2016 (Tr. 592, 619); (4) a March 2014 MRI documenting abnormalities (Tr. 439); (5) plaintiff's statement in August 2014 that she cannot sit long (Tr. 451); (6) the addition of "failed back syndrome" to her worker's compensation claim in 2016 by Dr. Wachendorf (Tr. 628-29); and (7) plaintiff's statement in May 2016 that she cannot sit longer than 25 minutes (Tr. 633). (Doc. 6 at 6). Plaintiff argues that she cannot sit and/or stand for six hours in a work day, 30 hours a week, as required by the ALJ's light work determination. (*Id.*).

The ALJ is responsible for assessing a claimant's RFC based on all of the relevant medical and other evidence. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). *See also Moore v. Astrue*, No. CIV. A. 07-204, 2008 WL 2051019, at *5-6 (E.D. Ky. May 12, 2008) (the ALJ is responsible for assessing the claimant's RFC by examining all the evidence in the record) (citing *Bingaman v. Comm'r of Soc. Sec.*, 186 F. App'x 642, 647 (6th Cir. 2006)). The ALJ can fulfill his obligation "without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999) (citations and internal quotation marks omitted)).

13

In this case, the ALJ fairly evaluated plaintiff's back impairments and reasonably determined that plaintiff retains the RFC to perform light work subject to additional exertional limitations. (Tr. 14). In making this determination, the ALJ conducted a thorough review of the record evidence of plaintiff's back impairments and reasonably noted that plaintiff's treatment history was not consistent with the alleged severity of her spine disorder (Tr. 16); that there were notable inconsistencies in the recorded reports and findings of plaintiff's visits with her orthopedic surgeon (Tr. 16); that clinical findings outside of the orthopedic surgeon's records showed further inconsistencies with the alleged severity of plaintiff's complaints (Tr. 17); and results of diagnostic studies were not entirely consistent with plaintiff's allegations. (Tr. 17).

Plaintiff does not take issue with the ALJ's rationale for not giving plaintiff a more restrictive RFC. Rather, she points to isolated findings in the record to suggest that the ALJ should have included greater restrictions on plaintiff's RFC based on those discrete findings. However, plaintiff does not connect these isolated findings with any evidence of specific limitations resulting therefrom and ignores the ALJ's reasoning for not giving plaintiff a more restrictive RFC. For example, plaintiff suggests the ALJ failed to consider "problems with the fingers on her left hand" in March 2014 and should have included RFC limitations to address those problems. (Doc. 6 at 6) (citing Tr. 454). Contrary to plaintiff's argument, the ALJ did consider the alleged limitations with plaintiff's left upper extremity in March 2014 that were reported by plaintiff's orthopedic surgeon. (Tr. 16) (citing Tr. 454-55). However, the ALJ pointed out that just five months later plaintiff reported absolutely no neck or upper extremity complaints to her surgeon and reported she was doing "very well" from a cervical perspective. (Tr. 16) (citing Tr. 451-52). Thus, it would not be reasonable for the ALJ to include an RFC limitation for plaintiff's alleged finger problems. Similarly, the ALJ considered the evidence of

plaintiff's "thoracic spine problems" in October 2014 and noted that plaintiff continued to report mid-and-low-back pain with radicular symptoms in her left leg. (Tr. 17). However, as the ALJ noted, plaintiff nevertheless had normal motor strength and reflex findings on physical examination, despite plaintiff's report of decreased sensation in the distal L4 dermatome. (Tr. 17) (citing Tr. 449). The ALJ also considered the records on plaintiff's spine impairment in 2016 and the medical imaging findings. (Tr. 17). However, the ALJ reasonably noted that the orthopedist's clinical examination findings were inconsistent with plaintiff's complaints and that other clinical and diagnostic study findings were also inconsistent with the alleged severity of plaintiff's allegations. (Tr. 17) (citing Tr. 419-420, 430-31, 437, 439, 506-07, 509-11 532-35, 551-57, 589-92, 597, 599-608, 638-67).

Contrary to plaintiff's assertions, the ALJ reviewed all of the relevant medical evidence and evaluated the consistency of that evidence with plaintiff's alleged limitations in assessing the RFC. Plaintiff argues that the "objective medical evidence" does not support the ALJ's conclusion that plaintiff can perform light work and sit and/or stand for six hours in a work day, 30 hours a week. (Doc. 6 at 6). However, plaintiff has not pointed to a medical opinion or any additional evidence in the record the ALJ failed to consider, including diagnostic test results or examination findings, that show that any objective findings in the record to demonstrate that she cannot perform these activities. Nor has plaintiff shown that the ALJ was bound to incorporate additional functional limitations into the RFC to account for plaintiff's back impairments. There was no opinion evidence from plaintiff's treating physicians, and the state agency physicians opined that plaintiff is limited to light work with exertional limitations, consistent with the RFC from the previous ALJ decision. (Tr. 110, 142). The undersigned notes that even if substantial evidence would support a different conclusion or where a reviewing court would have decided

15

the matter differently, the ALJ's decision must be affirmed if it is supported by substantial evidence. *See Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999). Accordingly, the ALJ's RFC determination is supported by substantial evidence and plaintiff's second assignment of error should be overruled.

### 3. Whether the ALJ erred by discounting plaintiff's subjective complaints of mental limitations.

Plaintiff argues that the ALJ erred in weighing her subjective complaints of mental limitations in accordance with 20 C.F.R. § 404.1529(c) and Social Security Ruling 16-3p. (Doc. 6 at 6-7).[7] Plaintiff argues that the state agency reviewing physicians found her subjective complaints regarding her "nerves" to be fully credible. (*Id.* at 7). Plaintiff contends that her testimony that she can only maintain attention for five minutes is credible and supports a finding that "she cannot focus to sustain work for 40 hours a week, would avoid others, and has problems with stress." (*Id.* at 7).

The SSA rescinded SSR 96-7p and replaced it with SSR 16-3p, which is applicable to agency decisions issued on or after March 28, 2016. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). SSR 16-3p therefore applies to the ALJ's decision issued in this case on April 12, 2017. SSR 16-3p eliminates "the use of the term 'credibility'" from the SSA's sub-regulatory policy and clarifies that "subjective symptom evaluation is not an examination of an individual's character." *Id.* Under SSR 16-3p, "an ALJ must focus on the consistency of an individual's statements about the intensity, persistence and limiting effects of symptoms, rather than credibility." *Rhinebolt v. Comm'r of Soc. Sec.*, No. 2:17-cv-369, 2017 WL 5712564, at *8 (S.D.

---

[7] Plaintiff does not argue that the ALJ erred in evaluating her subjective complaints of *physical* limitations; therefore, the Court determines that this argument is waived.

Ohio Nov. 28, 2017) (Report and Recommendation), *adopted*, 2018 WL 494523 (S.D. Ohio Jan. 22, 2018).

The regulations and SSR 16-3p describe a two-part process for evaluating an individual's statements about symptoms, including pain. First, the ALJ must determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 16-3p, 2017 WL 5180304, *3-8. The ALJ's assessment of a claimant's subjective complaints and limitations must be supported by substantial evidence and based on a consideration of the entire record. *Rogers*, 486 F.3d at 247 (internal quotation omitted). An ALJ's explanation of this decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248.

The ALJ conducted a thorough review of the record and evaluated plaintiff's subjective complaints in accordance with 20 C.F.R. §§ 404.1529(c), 416.929(c) and SSR 16-3p. The ALJ found that while plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and

17

other evidence in the record for the reasons explained in this decision and are given little weight." (Tr. 16). In making this determination, the ALJ cited the (1) lack of supporting objective medical evidence, (2) the lack of mental health treatment, (3) plaintiff's daily activities, and (4) the medical opinion evidence of state agency psychologists Drs. Tangeman and Lai. These factors substantially support the ALJ's finding that plaintiff's allegations regarding her symptoms were not entirely consistent with the medical and other evidence of record.

Substantial evidence supports the ALJ's determination that the longitudinal medical evidence and plaintiff's lack of mental health treatment do not support the severity of mental limitations that plaintiff described in her hearing testimony. The ALJ recognized the lack of mental health treatment since the prior ALJ decision. (Tr. 17). While plaintiff reported depression to a primary care provider in January 2014 and was prescribed Cymbalta by this provider, there was no record of additional reports of depression. (*Id.*). Plaintiff repeatedly denied problems with depression, anxiety, fatigue, and memory to her primary care provider. (*Id.*) (citing Tr. 532—plaintiff denied anxiety/nerves and depression in January 2016; Tr. 591— "negative for depression" and "not nervous/anxious" in February 2016; Tr. 606—in March 2016, plaintiff was "negative for depression and memory loss" and "not nervous/anxious"). In addition, the record only contained the August 2011 consultative evaluation with Dr. Murphy and the subsequent October 1, 2014 report stating that plaintiff met with Dr. Murphy for the first time since the evaluation. (*Id.*). No other records from Dr. Murphy are present in the record even though plaintiff testified that she saw him for counseling in 2013-2014. Under these circumstances, the ALJ reasonably found that plaintiff's alleged symptoms of memory and concentration problems, depression, irritability, fatigue, and crying spells were not fully supported by the record.

18

In addition to the lack of objective evidence to support plaintiff's allegations of disabling mental limitations, the ALJ reasonably relied on plaintiff's daily activities that he found were inconsistent with plaintiff's allegations. The ALJ noted that despite plaintiff's allegation that she is unable to maintain attention for more than five minutes at a time, plaintiff reported that she regularly watches movies, watches football on a weekly basis, and regularly uses a computer and the internet. (Tr. 18) (citing Tr. 51, 330). Plaintiff also reported that she was able to take care of others by getting her granddaughter ready for school, driving her granddaughter to autism therapy multiple times a week, and driving her son to school on a daily basis. (*Id.*) (citing Tr. 40, 51, 329-331). In addition, plaintiff socializes with her friends, engages in social networking every few days, attends church every "once in a while," and goes out to eat and to the movies "about once a year." (*Id.*) (citing 51, Tr. 330).

Plaintiff primarily argues that the ALJ erred in discounting her complaints when the state agency psychologists, whom the ALJ afforded "some weight," found her to be "fully credible." Plaintiff is correct that Drs. Tangeman and Lai found her to be "fully credible." (Tr. 108, 139). However, in rendering their assessments, they also noted that plaintiff did not receive psychiatric therapy until October 1, 2014, after she was originally evaluated in relation to a work-related injury in 2011. In addition, the ALJ was not required to defer to the findings of Drs. Tangeman and Lai on plaintiff's "credibility." Instead, the ALJ was required to evaluate plaintiff's subjective complaints based on *all* of the record evidence, and not just the pre-May 2015 evidence before the state agency. *Rogers*, 486 F.3d at 247.

Plaintiff also argues that the ALJ failed to recognize that she had "problems with her medical insurance and co-pays." (Doc. 6 at 5). When asked by the ALJ why she stopped seeing Dr. Murphy, plaintiff cited transportation costs associated with getting to his office on the "other

side of town." (Tr. 46). Even if plaintiff's argument had merit, the ALJ provided several other reasons for discounting plaintiff's subjective complaints of disabling mental limitations beyond her lack of mental health treatment. The ALJ also considered plaintiff's daily activities and plaintiff's reports to her primary care physician denying any mental health issues.

Overall, the ALJ reasonably determined that plaintiff's allegations of disabling mental limitations were not supported by the record as a whole, including plaintiff's daily activities and the opinions of the state agency reviewing psychologists. Where, as here, the ALJ's assessment of plaintiff's subjective allegations of her limitations is supported by substantial evidence, the Court affords great weight and deference to the ALJ's finding. *Walters*, 127 F.3d at 531. Accordingly, plaintiff's third assignment of error should be overruled.

**IT IS THEREFORE RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and this case be closed on the docket of the Court.

Date: ___8/16/19___

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

KELLY L. DEFFINGER,
    Plaintiff,

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:18-cv-258
Barrett, J.
Litkovitz, M.J.

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn*, 474 U.S. 140 (1985); *United States* v. *Walters*, 638 F.2d 947 (6th Cir. 1981).